United States District Court
Southern District of Texas
**ENTERED**
October 06, 2020
David J. Bradley, Clerk

## IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS GALVESTON DIVISION

No. 3:19-cv-00111

THE HANOVER INSURANCE COMPANY, *PLAINTIFF*,

v.

BINNACLE DEVELOPMENT, LLC F/K/A BINNACLE DEVELOPMENT AND CONSTRUCTION, LLC; LONE TRAIL DEVELOPMENT, LLC; AND SSLT, LLC, *DEFENDANTS*.

## MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, UNITED STATES DISTRICT JUDGE.

Before the court are two competing motions for partial summary judgment. These motions address one issue: whether the liquidated-damages clauses in the parties' contracts constitute an unenforceable penalty. Having considered the parties' arguments, the summary-judgment record, and the applicable law, the court agrees with the plaintiff that the liquidated-damages clauses are unenforceable. The court accordingly grants the plaintiff's motion (Dkt. 19) and denies the defendants' (Dkt. 23).

## I.    BACKGROUND

This commercial dispute arises from three constructions projects in Galveston County. The defendants—Binnacle Development, Lone Trail

1

Development, and SSLT—are all land developers.[1] To complete paving and infrastructure work on their respective residential developments in Galveston County Municipal Utility District No. 31, they each entered into contracts with the same contractor, R. Hassell Properties, Inc.[2] At the request of Hassell, the plaintiff—Hanover Insurance Company—issued payment and performance bonds as a surety in favor of the defendants for each of the three construction projects.[3]

As a condition of issuing these bonds, Hanover required that Hassell enter into an indemnity agreement.[4] In the indemnity agreement, Hassell assigned Hanover "all right, title[,] and interest in and to any and all contracts[,] including all rights in and to all subcontracts or purchase orders" and "all monies retained, due, or due in the future on account of any contract, whether bonded or unbonded, in which [Hassell has] an interest . . . ."[5] Hassell and Hanover agreed that this assignment would become effective in the event Hassell defaulted—that is, in the event Hassell failed to prosecute any contract, including failing to perform work or pay subcontractors.[6]

Sure enough, Hassell defaulted.[7] It ceased all business operations, including its work on the Galveston County construction projects.[8] As a result, Hanover paid

---

[1] Dkt. 22 at 1.

[2] *Id.*; Dkt. 19-2 at 3.

[3] Dkt. 1 at 3;

[4] Dkt. 19-2(D); Dkt. 1-1.

[5] Dkt. 1-2 at 3.

[6] Dkt. 1-2 at 3–4. As Hanover recites in its complaint, there were multiple events that could qualify as a "default." Failing to prosecute contracts and failing to work or pay subcontractors happened to be the one applicable to this case.

[7] Dkt. 19 at 4; Dkt. 1 at 4.

[8] Dkt. 1 at 4.

Case 3:19-cv-00111   Document 32   Filed on 10/06/20 in TXSD   Page 3 of 11

the defendants more than $437,000 in claims against the bonds, and all of Hassell's contract rights were assigned to Hanover.[9] Importantly, the assignment of rights to Hanover included balances due under each of the three contracts between Hassell and the defendants.[10] According to Hanover, the defendants collectively hold (accounting for agreed offsets) about $570,000 in remaining contract balances.[11]

Over the next several months, Hanover discussed payment of the contract balances with the defendants—to no avail.[12] Hanover's lawsuit followed. In response to Hanover's complaint, the defendants contended, as an affirmative defense, that Hanover's damages were offset by identical $2,500 per diem liquidated-damages clauses in the three construction contracts:

> 5. LIQUIDATED DAMAGES FOR DELAY/ECONOMIC DISINCENTIVE. The Contractor and the Owner agree that time is of the essence of this Contact. The Contractor and the Owner agree that a breach of this Contract by failure to complete the Work in the specified time will cause harm to the Owner, and further agree that the harm to the Owner would sustain and the actual measure of damages the Owner would incur from the breach are incapable or very difficult of ascertainment. Therefore, the Contractor and the Owner agree that for each and every calendar day the Work or any portion thereof shall remain uncompleted after the expiration of the time limit(s) set in the Contract, or as extended under the provisions of these General Conditions . . . Contractor shall be liable to Owner for liquidated damages in the amount of $2,500 for each such calendar day, which sum the parties agree is a reasonable forecast of the damages the Owner will sustain per day that the Work remains uncompleted and in no way constitutes a penalty. Said $2,500 per day shall also be considered an "economic disincentive for late completion of the Work" pursuant to Section 49.271(e), the Texas Water Code. The Owner shall have the option

---

[9] Dkt. 1 at 4–5.
[10] Dkt. 1 at 5.
[11] Dkt. 19 at 1.
[12] Dkt. 1 at 5.

to deduct and withhold said amount from any monies that the Owner owes the Contractor or its sureties or to recover such amount from the Contractor or the sureties on the Contractor's bond.[13]

According to the defendants, they are collectively entitled to offset Hanover's alleged damages by about $900,000 in liquidated damages because of completion delays.[14]

Hanover moved for partial summary judgment on the defendants' affirmative defense, arguing that the liquidated-damages clauses are unenforceable penalties. In both their response to Hanover's motion and in their own motion for partial summary judgment, the defendants argue that the clauses are enforceable because the Texas Water Code permits economic disincentives for late completion of construction work. Thus, the issues before the court are twofold: (1) Whether the Texas Water Code applies to the parties' contracts, and (2) if not, whether the liquidated-damages clauses constitute unenforceable penalties under Texas common law.

## II.    SUMMARY JUDGMENT

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[15] "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact."[16]  If the moving party

---

[13] Dkt. 19-2 at 85.
[14] Dkt. 6 at 4; Dkt. 19 at 5; Dkt. 19-3, 19-4, and 19-5.
[15] FED. R. CIV. P. 56(a).
[16] *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007).

meets its initial burden, the non-movant must then designate specific facts to show that there is a genuine issue of material fact.[17]  Evidence is viewed in the light most favorable to the nonmovant.[18]

## III.   ANALYSIS

### a.   The Texas Water Code does not apply.

As a threshold matter, the defendants contend that the Texas Water Code supplants the liquidated-damages analysis because their contracts are public-work contracts that will ultimately benefit the Galveston County Municipal Utility District. As the defendants see it, the Water Code permits penalties (or "economic disincentives") for delays in construction work, so the traditional Texas common-law analysis of liquidated damages does not apply. Hanover disagrees, primarily arguing that the contracts at issue are not within the reach of the Water Code.

Hanover has the better argument. Section 49.271(e) of the Texas Water Code states that "[a] *district contract* for construction work may include . . . economic disincentives for late completion of the work."[19] It is undisputed that all parties to the contracts here are private, not public, entities. More importantly, the defendants do not allege that a "district" is a party to any of their contracts. The defendants nonetheless contend that their contracts are "district contracts" because they are public-works contracts that expressly *benefit* a district. This argument is unpersuasive. Taken for all its worth, it's difficult to discern any

---

[17] *Id.*
[18] *Tolan v. Cotton*, 572 U.S. 650, 657 (2014).
[19] TEX. WATER CODE § 49.271(e) (emphasis added).

5

limiting principle to the defendants' reading of the statute. One could imagine a number of remote contracts that may, somehow, directly or indirectly benefit a district, and none of those remote contracts would be thought "district contracts" subject to the Water Code.

An example illustrates why. Suppose one has what's colloquially referred to as a "government contract." Based on standard English usage, that contract would reasonably be thought as one *with, by*, or *of* the government, not one that happened to benefit or affect the government. The latter understanding would be, at best, misleading. As the defendants correctly point out, words such as "district" and "government," when they precede "contract," function as attributive nouns (i.e., nouns that modify other nouns[20]). The effect of such modifications is clear here: "district contracts" are ones made with or by a district. The handful of prepositional phrases that can accurately substitute in for an attributive-noun phrase like "district contract" suggests that the defendants' reading is too loose. Unless directed otherwise, courts construe statutes fairly, not expansively.[21]

In addition to standard usage, other provisions in the Water Code support this reading. Section 49.271(a), for example, says that "[a]ny contract *made by the board* for construction work shall conform to the provisions of the chapter."[22] (The "board" refers to the governing body of a district.[23]) Section 49.0002, governing

---

[20] BRYAN A. GARNER, GARNER'S MODERN ENGLISH USAGE at 1017 (Oxford Univ. Press 2006).
[21] ANTONIN SCALIA & BRYAN GARNER, READING LAW 33–40 (2012).
[22] *Id.* § 49.271(a) (emphasis added).
[23] *Id.* § 49.001(a)(3).

Chapter 49's "applicability," also provides more helpful context. That provision states that Chapter 49 "applies to all general and special law districts . . . ."[24] The Water Code's scope is thus limited and excludes the swathe of contracts between private parties that may have some fortuitous benefit to a district.

The defendants alternatively argue that, even if their contracts are not "district contracts" within the meaning of the Water Code, parties are free incorporate statutory rights into their contracts. The defendants insist they have done this with the Water Code provisions permitting economic disincentives, effectively displacing the common-law analysis of liquidated damages. This argument is similarly unconvincing.

In support of this contention, the defendants use contractual agreements to arbitrate under the Federal Arbitration Act as an example in which a statutory right can be incorporated by agreement. This argument, however, overlooks the fact that the FAA, by its terms,[25] applies only to certain agreements to arbitrate. Thus, to use it as an example simply begs the question: The analogy assumes that the Water Code applies to the parties' contracts. Nothing in the defendants' extensive discussion of the Water Code gives the court any reason to think that assumption true. Indeed, the defendants merely point out that nothing in Water Code *prohibits*

---

[24] TEX. WATER CODE § 49.002.
[25] *See* 9 U.S.C § 1–2 (stating that the FAA applies to contracts "evidencing a transaction involving" foreign and instate commerce).

parties from incorporating its provisions.[26] That's not enough. The cases involving other statutes the defendants cite in a footnote are likewise inapposite.

At the end of the day, the defendants cite no authority for the proposition that a contract parroting a statute, without more, precludes application of a state's common law. For that reason, the parties' liquidated-damages provisions must be analyzed under Texas courts' test for determining whether liquidated damages constitute an unenforceable penalty.

### b.   The liquidated-damages clauses are unenforceable penalties.

Notwithstanding its otherwise wide regard for freedom of contract, Texas law reasonably limits damages for contractual breach to "just compensation for the loss or damage actually sustained."[27] Texas courts thus "carefully review liquidated damages provisions to ensure" that they adhere to that principle.[28] If they don't, they amount to unenforceable penalties.[29]

To determine whether a liquidated-damages provision constitutes an unenforceable penalty, courts must consider two factors: (1) whether "the harm caused by the breach is incapable or difficult of estimation," and (2) whether "the amount of liquidated damages called for is a reasonable forecast of just compensation."[30] And even when liquidated-damages provisions are "properly designed" under those two criteria, they are still unenforceable when "the actual

---

[26] Dkt. 22 at 15.
[27] *Stewart v. Basey*, 245 S.W.2d 484, 486 (Tex. 1952).
[28] *Atrium Med. Ctr., LP. v. Hous. Red C LLC*, 595 S.W.3d 188, 192 (Tex. 2020).
[29] *Id.*
[30] *Phillips v. Phillips*, 820 S.W.2d 785, 788 (Tex. 1991).

damages incurred were much less than the liquidated damages imposed, measured at the time of the breach."[31] Hanover argues it should prevail on all three inquires.

Setting aside the first factor, the ease with which the harm caused by the breach can be estimated, it's clear that Hanover should prevail on the remaining two. To start, the summary-judgment evidence shows that no study or analysis went into setting $2,500 per diem as the delay fee (which accumulated to about $900,000).[32] The liquidated-damages clauses were instead leftovers from a form contract that neither Hanover nor the defendants drafted.[33] For liquidated damages to be "reasonable forecasts," Texas courts require at least some thought in their making.[34]

Hanover also offers a persuasive argument about the ultimate disproportionality between the damages imposed by the liquidated-damages clauses and the actual damages the defendants sustained. "When a contract's damages estimate proves inaccurate, and a significant difference exists between the actual and liquidated damages, a court must not enforce the provision."[35] The defendants here seek to offset Hanover's alleged damages by $900,000 because of completion delays. Yet all three defendants—Binnacle,[36] Lone Trail,[37] and

---

[31] *Atrium Md. Ctr.*, 595 S.W.3d at 192–93 (quoting *Phillips*, 820 S.W.2d at 788).

[32] Dkt. 19-1, at 91:11–15.

[33] *Id.* at 72: 1–13.

[34] *See, e.g., Garden Ridge, L.P. v. Advance Int'l., Inc.*, 403 S.W.3d 432, 442 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (noting that the party attempting to enforce the liquidated-damages clause "did not perform any actual studies on what costs it would incur due to vendor noncompliance" and "could not explain any specifics" as to how it came up with the figure).

[35] *Atrium Med. Ctr.*, 595 S.W.3d at 193.

[36] Dkt. 19-1, 206: 21–24.

[37] *Id.* at 207: 1–12.

SSLT[38]—have conceded that the alleged delays did not cause them any money damages. Admittedly, the case law is less than clear as to what ratio of actual damages to liquidated damages amounts to a "significant difference." But here the issue is easy: When actual damages are $0 and liquidated damages are $900,000, a "significant difference" exists.[39]

If all this were not enough, the defendants do not respond to any of Hanover's arguments. The defendants do not counter that damages were capable of estimation. They do not counter that the liquidated damages were a reasonable forecast of just compensation. They do not counter that the liquidated damages were proportional to the damages they actually sustained. And they do not dispute any of Hanover's underlying allegations. In light of both Hanover's marshalling of the summary-judgment evidence and the defendants' lack of rejoinder, the court must conclude that the liquidated-damages provisions in the parties' contracts amount to penalties. Those provisions are thus, under Texas law, unenforceable.

* * *

For the foregoing reasons, the court grants Hanover's motion for partial summary judgment (Dkt. 19) and denies the defendants' (Dkt. 23).

---

[38] *Id.* at 204–205.

[39] *Cf. Garden Ridge, LP*, 403 S.W.3d at 441 (holding that $79,957 and $13,000 were unreasonably large when actual damages were $0); *Caudill v. Keller Williams Realty, Inc.*, 828 F.3d 575, 577 (7th Cir. 2016) (applying Texas law) (holding as unenforceable the liquidated-damages clause because, among other things, the defendant had not sustained actual damages and the clause imposed $10,000 per breach); *Loggins Constr. Co. v. Stephen F. Austin State Univ. Bd. of Regents*, 543 S.W.2d 682, 685–86 (Tex. App.—Tyler, 1976, writ ref'd n.r.e) (holding as an unenforceable penalty a $250 per diem liquidated-damages clause when actual damages did not exceed $6.500).

Signed on Galveston Island on this, the <u>6th</u> day of October, 2020.

_____
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE